**UNION TRUST CO v
CLEVELAND UNITED REALTY CO et**

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided Feb 27, 1934

Calfee, Fogg & White, Cleveland, for plaintiff in error.

Halle, Haber & Berick, Cleveland, and Day & Day, Cleveland, for defendants in error.

SHERICK, J, (5th Dist), and BLOSSER and MIDDLETON, JJ, (4th Dist) sitting.

284

## OPINION

By MIDDLETON, J.

In view of the fact that this is an action at law and that the judgment of the court has all the protection that is afforded to the verdict of a jury we might dispose of this issue by saying that there are admitted facts in evidence sufficient to support the judgment, and we might well say that the cross petition fails to state a cause of action in an action at law. This is so for the reason that it could not state a cause of action after admitting default of covenants imposed on it under the lease. The only possible right it might have would be in the nature of an equitable demand. We do not wish to be understood as saying that it has such right under the established facts in this case but only refer to this matter to emphasize the disregard of the realty company to the requirement that before it can be heard in a court at law it must allege and prove that it has performed all the obligations of the lease on its part to be performed. However, as the disposition of this matter is the key to another very important question we will observe it more in detail.

The lease itself refers to this sum of $50,000 as a security and also as part of the fund for the construction of the building. It is strenuously urged by the realty company, of course, that this money was deposited as security only although admitting that it might have a dual relation to the transaction. We are of the opinion that when the lease is considered as a whole and all of its provisions taken together it is manifest that it was the intention of both parties that this $50,000 was to be treated as money for the construction of the building, and that it was to be held by the trust company for that purpose only and no part of it was to be used until the $60,000 which was to be deposited on January 2, 1930, was exhausted. No other conclusion is reasonable when all of the provisions in the lease respecting this $50,000 are considered. There is at least sufficient evidence to support a judgment based on that grounds. However, there are other reasons to support the judgment.

We conclude that by the provisions of the lease itself this sum of $50,000 was placed beyond any claim of the realty company under the admitted facts. That provision reads as follows:

"In the event of the termination of this lease by reason of any default on the part of the lessee or the expiration of this lease before the expenditure of the full amount of said fund as above provided, any unexpended balance remaining therein shall inure to and become the property of the lessor."

The fund referred to in this provision was the $60,000 to be deposited on January 2, 1930, and the $50,000 deposited with the lessor simultaneously with the execution of the lease and which sum is the one now under consideration. It is urgently contended by the realty company that this sum of $50,000 was in no sense a balance as contemplated by the provision of the lease aforesaid. We are not impressed with this contention. The $50,000 was a balance. It was made a balance by the parties to the lease. It was the remainder of the construction fund which was to be used only after the primary part of the fund had been exhausted. The term "balance" has no legal definition but in its ordinary sense it means what remains, the remainder. Now the lease expressly provides:

"That no part of the $50,000 deposited with the lessor simultaneously with the execution of this lease shall be expended until the full sum of $60,000 shall have been expended on said building in the manner aforesaid."

If this provision does not make the $50,000 the balance of the whole construc-

tion fund it would be difficult to adopt proper language so to do. It is manifest, we think, that this provision was made with the purpose and intent of having it apply to the $50,000 in the event of the lessee's default in making the first deposit. It is absurd to believe that the parties to the lease entertained any thought whatever that the lease might expire before the expenditure of the full amount of $110,000. It is evident, we think, that it was the purpose of the parties to have the $50,000 reserved as a balance in the construction fund to be expended only as a balance of said fund and not in any other way and not, therefore, to hold as a security. We say this for the further reason that this fund originally was the balance of the purchase price of the fee in the leased premises. The realty company was to pay $60,000 for the fee and the trust company was in turn to re-purchase it at a price of $110,000. $60,000 of the latter sum would balance the $60,000 to be paid for the fee by the realty company and that would leave a balance of $50,000 due from the trust company to the realty company. But it is evident from all the facts in the case that the trust company never let this $50,000 get away from it. There was a check issued and a form of payment made but this money never left the trust company and the trust company never intended to part with it until the requirements of the lease had been met by the realty company. Whether correct in all that we have said or not there is ample ground here to support the judgment of the trial court under the rule that obtains with reference to the verdict of a jury.

Because the rights of the indemnity company are closely related to the rights of the realty company in connection with the $50,000 fund we will now give attention to what the issues are as between the trust company and the indemnity company. As before observed, the trust company in its petition claims a complete default on the part of the realty company in the payment of rentals and taxes and the deposit of the $60,000 on January 2, 1930. Now the only defense of the indemnity company to the defaults named was the defense of the realty company under its claim for a balance due from the deposit of $50,000. For the reasons already stated this claim was destroyed by the judgment against the realty company and as a result of that judgment the indemnity company is now without any defense to the claim of the trust company for the full penalty named in the bond. This situation is the same as the one which obtained in the case of **Rock v Building**

**Company et, 87 Oh St 244.**. We have examined the complete record in that case and if the Supreme Court was correct in its conclusions and judgment therein it is the plain duty of this court either to remand this branch of the instant case to the trial court with direction to render a judgment for the trust company in the sum of $25,000 or enter that judgment here. We know of no reason why this court should not render the judgment that the trial court should have rendered.

It is argued in defense of the indemnity company that the bond should not be construed as subjecting it to the full penalty for every default that might be committed by the realty company. The answer to this contention is that the evidence discloses that the failure of the realty company to make the deposit of the $60,000 on January 2, 1930, together with the defaults then made, wrecked the whole plan under which the lease was made and required the lessor to demand the termination of the lease. It is apparent that from the first default in October, 1929, there was no further intention on the part of the realty company to continue the lease on its part, and there is ample reason for this conclusion when we consider the business condition then prevailing and certain to continue for an indefinite time. All the necessary facts being in evidence to establish the complete failure on the part of the realty company it was the duty of the trial court to render a judgment for the full indemnity provided by the bond.

We will briefly notice the claim of the trust company now for a judgment of $60,000 for the failure of the realty company to deposit that sum of January 2, 1930. It should be observed that the lease was not terminated until May 22, 1930. If the trust company wanted a specific performance of the contract it had ample time and opportunity to bring an action for that relief. What the trust company is trying now to do is nothing more than an attempt by an action at law to get the equivalent of specific performance. In this connection it might be well to observe that the trust company is demanding in this action, either directly or indirectly, what amounts to the sum of $135,000. While it may be true that $50,000 of that amount was a mere paper transaction it nevertheless has relieved it from any claims for an accounting in any way for that sum. There is nothing in the lease that we have discovered or has been called to our attention which indicates in any way that a default in the deposit of the $60,000 should give

the trust company a liquidated demand for that amount, and we know of no rule of law that entitled it to any more than compensation for the damage it sustained. The trial court found against the trust company on its contention for the full amount of $60,000 and as there was no evidence to establish general damages we will not interfere with that judgment.

There was no error in the admission of evidence and it is our conclusion, therefore, that the several judgment against the realty company for the rents and taxes be affirmed, and that the joint and several judgment as against the indemnity company and the realty company for the same amount be reversed and set aside and a joint and several judgment may be entered against these companies for the sum of $25,000 with interest as prayed for in the petition.

Counsel may prepare journal entries in accordance with the foregoing orders.

BLOSSER and SHERICK, JJ, concur.